[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JULY 24, 1997
By memorandum of decision, dated April 15, 1997, this court denied Motions for Summary Judgment filed both by plaintiff and defendants [119 CONN. L. RPTR. 391]. On April 22, 1997, defendants moved to reargue and at oral argument on July 15, 1997, urged the court to reconsider its decision because (1) in the interim the Appellate Court in its decision at 45 Conn. App. 626 (1997), had reversed the trial court's decision in Ficara v. O'Connor on which this court had relied and (2) the court had not adequately addressed defendants' claim that plaintiff had failed to exhaust its rights under applicable insurance policies.
— I —
Under the Connecticut Insurance Guaranty Association Act (the "CIGA Act"), CIGA is obligated to pay any `covered claim' arising under a policy of insurance issued by an insurer later determined to be insolvent if the claim is filed with it, or is made the subject of a notice to be receiver or liquidator of the insolvent insurer, within two years from the date of the declaration of insolvency. Connecticut Insurance Guaranty Association v. Yocum,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 539691, 17 CONN. L. RPTR. 343 (June 6, 1996, Sheldon, J.). General Statutes §§ 38a-841 (1)(a) (ii) (B). General Statutes § 38a-838 (6) defines a "covered claim" as "an unpaid claim, including, but not limited to, one for unearned premiums, which arises out of and is within the coverage and subject to applicable limits of an insurance policy to which sections 38a-836 to 38a-853, inclusive, apply issued by an CT Page 12419 insurer, if such insurer becomes an insolvent insurer after October 1, 1971 . . . [T]he term `covered claim' shall notinclude any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise . . ." (Emphasis added.)
CIGA was created to provide a resource for persons insured by or with claims against policies issued by an insurance company that has become insolvent. The act was intended to protect the insolvent insurers and the insolvent insurer's insureds. EasternPress v. Peterson Engineering Co., Superior Court, judicial district of New Haven, Docket No. 256063, 5 CONN. L. RPTR. 348 (December 10, 1991, Gordon, J.).
The defendants in their cross motion for summary judgment argued that the CIGA Act's definition of a "covered claim" excludes "from coverage by CIGA any amount due an insurer as subrogation recoveries or otherwise, and expressly prohibits an insurer from asserting a claim against the insured of an insolvent insurer." The defendants contend MDC is "an insurer" and squarely prohibited from recovering from the defendants by reason of General Statutes § 38a-838 (6).
MDC, however, argues that it is not an "insurer," but a self-insured employer, falling outside the scope of the excluded entities listed in General Statutes § 38e-838 (6) and that its reimbursement claim is a covered claim under the terms of CIGA.
The cases cited by defendants which deny reimbursement for workers' compensation payments in similar circumstances all involve payments made by an insurance company. No appellate decision in Connecticut supports the argument of the defendants.
In Ficara v. O'Connor, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 344963 (April 11, 1994, case, S.T.R.), plaintiff, a police officer employed by the Town of Manchester, was involved in an automobile collision and injured. Under its workers' compensation self-insurance agreement, the town of Manchester paid the plaintiffs claim and made itself an intervening plaintiff for the purposes of recovering those sums expended by it. At trial, the defendant, CIGA, argued that the town of Manchester could not recover damages because the town was in the excluded class under General Statutes § 38a-838 (b). This claim was rejected by the trial referee, Case, J., who held that the town of Manchester was not CT Page 12420 excluded from coverage and that the claim was a covered claim under the Statute, stating "in the view of the Trial Referee, the intent of C.G.S. 38a-838 was to exclude insurers, not municipalities who are self-insured for certain amounts for economic reasons."
The distinction drawn in the trial court's decision between intervening plaintiffs seeking reimbursement for workers' compensation payments based on whether the plaintiff is an insurer or self insured seems to be grounded on the statutory scheme and is consistent with the express language of the statute.
Even though the Ficara decision has been reversed on other grounds by the Appellate Court in Ficara v. O'Connor,45 Conn. App. 626 (1997) (late filing of report by attorney trial referee could not be waived) the basic reasoning of the trial court decision on the issue of whether the MDC is an "insurer" under the statute remains cogent and unaffected. MDC does not carry insurance to cover its risk under the Workers' Compensation Act, but, instead, satisfied its obligations through its own funds. It is a self-insurer as was the town of Manchester inFicara v. O'Connor, supra. It is not an "insurer" for purposes of General Statutes § 38a-838 (6) and is therefore not subject to the special defense filed by the defendants.
— III —
Defendants further claim that because the claimant Doucette failed to exhaust the policy limits of his uninsured motorist policy MDC cannot press its claim under the statute because General Statutes § 38a-845 provides in pertinent part:
 (1) Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under sections 38a-836 to 38a-853, inclusive, shall exhaust first his rights under such policy. Any amount payable on a covered claim under said sections shall be reduced by the amount of any recovery under the claimant's insurance policy or chapter 568.
Even though MDC's claim may be derivative of the employee's claims, this section does not require MDC to exhaust Doucette's CT Page 12421 claims or make certain that Doucette has exhausted his claims before asserting its own independent claims. Doucette's claim under his uninsured motorist's policy is a remedy available to him because of his personal insurance contract and MDC could not assert Doucette's rights under his policy and should not be prejudiced by his failure to do so.
Motion to reconsider denied.
WAGNER, J.